06-1393 Cordis Corporation v. Medtronic et al. In my six minutes I'd like to address two issues. The first is that the district court did not grant JMOL a non-infringement. And I want to clarify that we're only talking literal infringement in this case. Cordis did not put on a DOE case. My second issue, we believe we're entitled to a new trial in obviousness in light of KSR. I'd like to start with infringement. The district court did not follow this court's teachings in ADE 1 concerning substantial uniform clearance. Had it done so, it would have found, as a matter of law, that the walls of Medtronic Stens do not have a substantial uniform thickness from end to end. I read over that. Of course, we're fortunate in having the Authors Without Opinion Society here. Perhaps not. But I didn't see anything in that paragraph that you rely on that indicated that we were saying, this is how you must determine thickness. It seems to me the principal issue, as I read it, was whether or not you could read into the claim a numerical limitation. And the court said you couldn't. And then the court went on to say, well, now what are we talking about the walls of these things? And it gave sort of a hypothetical example. And you seem to me to be arguing that in doing that, we somehow prescribed the method by which it was to be measured. Your Honor, what we have here is a situation where the structure is completely undisputed. And this court has said repeatedly in at least seven cases that where you have undisputed structure, the whole infringement inquiry collapses into one of the law. It's essentially claim construction. One recent case on that is the Mind Mail decision, 476 F. 3rd of 1378. And there's six others. What we are talking about here is a question of law, not fact. And in the opinion, in the ABG 1, this court said, second, according to the patent's claims, it is the wall surface that needs to have a uniform thickness. And the full circumference of the round strut is not involved in making up the wall surface. That's what the court said when they were talking about the strut. We completely accept that. We embrace it.  We go forward. We're talking now about the crown. The crown, the very tips of the crowns, which is what we're talking about here, most certainly is involved in making up the wall surface. And there is absolutely no doubt on that. Horace's expert conceded at trial that that was the case. There was no disputing evidence. And I cite the court to the blue brief at 32. So what we do— Are you telling us that the jury should not have been permitted to determine whether these, they were of a uniform thickness? That is exactly the point, Your Honor. We moved for jail a while at the end of the case. It should not have gone to the jury. This is not a jury question. This is a judge question. And what we have here is undisputed fact that the wall tapers at the ends. Let me address their main argument, which is, well, it's only 2%. Claim language says substantially uniform thickness. Therefore, it's only about 2% and we can ignore it. That's wrong. It's wrong because in the prosecution's history, in the Lazarus case, which was addressed by the examiner, there was a finding by the examiner that these little, teeny, tiny staples, which occupied virtually no real estate on the Lazarus death, were sufficient to take it outside of substantially uniform thickness. And the examiner's statement is at page 46 of the blue brief. And perhaps more importantly, Dr. Collins, of course, is an expert at trial, admitted that Lazarus is not substantially uniform thickness because of the staples. Well, most certainly, if Lazarus is not substantially uniform thickness, the roundedness at the end of a metrotic sentence cannot possibly be substantially uniform thickness as well. The district court urged on several grounds, refused to give a jury instruction with respect to this court's instructions in AB1. The court granted a motion in limiting, where our experts couldn't even explain that their testimony about the imaginary circles came from this court's decision, so they looked like idiots in closing when they were mocked for making up this wild theory. In my remaining time, Your Honor, we asked for a curative instruction at trial with respect to the abuse of the 100% holding. The variation at the end is absolutely more than 100%. It goes from the diameter of the wall down to virtually zero. Clearly more than 100%. Counsel conceded in the closing that there was a variation at the end. But he argued that there could never be a 100% variation in a stent. His argument was, if you have a three-inch stent, obviously I'm making it for dimension, you can never get down to zero, because if you get down to zero, it's no longer a stent. That was his argument. That's not what 100% means. Based on the prosecution history, based on what this court said, if it's three inches here and it goes to an inch and a half here, that's 100%. Any time there's double thickness or more, it's 100%. Now, if I may quickly address the obvious mistake here. The law chased on us during this case. The jury instruction in this case was a flat-footed, rigid application of the TSM test. That is exactly what KSR said is now appropriate. There is substantial prejudice in this case for several reasons. First... Did you object to the... We did not object, Your Honor. We put the case law in our brief. Since then, we've collected, I think, three other cases, the 7th, the 9th, and the 10th, and the 2nd, all said you don't have to object when the law changes. We found no law on the other side of that issue. It is prejudicial. We're dealing with a mechanical patent here, a very simple patent, very easy to understand. We're dealing with prior art that is extremely close and obviously, we think, invalidating. We have the Irsek patent, which teaches essentially a stint of the 7.62. We have the Hammerschlag patent, which teaches balloon expandability and inter-aluminum delivery. It is a slam dunk. It's common sense to combine those. But the jury in this case was specifically told that unless there was an express teaching of TSM, the jury could not combine. Do you think... Is the burden of your argument that every obviousness case that was tried under the pre-Supreme Court decision would be presumptively reversible absent the showing of harmless error? Absolutely not. And let me tell you why, Your Honor. In this case, enormous amounts of time was put into arguing to the jury about whether or not the references could or could not be combined. And I do have some records... In any case in which obviousness is contested seriously, that's going to be what you argue. That's one point, Your Honor. If I may give you the cycle, because they're not that brief, it's the appendix at 5585 and the appendix at 5528-29. This is where there was the battle in the closing arguments on whether or not they could or could not be combined. To answer your question, this is a simple mechanical case that's important under KSR. It's an extremely high standard for the one-of-ordinary skill in the arts. And this is very unusual in this case. In this case, one-of-ordinary skill in the arts is a highly-skilled physician working with a highly-skilled engineer. So it's a very high level of... By the way, we're not going to hold you strictly to your time, so I'm sensing some nervousness here. We will definitely preserve your full time. He's very good. He told me to take as much as I can. That was my guess. Very well. Please proceed. But you say that if there had not been such an instruction, at least highly likely that the case would have come out the other way. Is that right? Indeed, Your Honor. I don't see how it could have come out any differently. If we look at the art, let's talk about the 984 patent. The 984 patent is subsequent to the 762. The 762 is prior art. The stint elements in 762 are exactly the stint elements in 984. No doubt. No question about it. It's all conceived. The only thing that adds in the 984 was a straight little connector bar that connected the two elements together so they didn't kind of float off. That connector bar already existed in the prior art. It existed with the connected Z-stints. We refer, for example, to the Wallace article. But it was all over the prior art. People have been using these connected Z-stints forever. So the whole invention of the 984... Believe me, I don't think this is the slightest bit disputed. You take that little connector, you stick it in between the two, and voila, we have the 984. The 762 is almost that simple. The 762, the URSIC patent, predated by two decades. The URSIC patent is a stint. But instead of being balloon-expanded, it was not. It was expanded with a little expander device, a mechanical device. But balloon energy was known by the time of the invention, and the Hammerschlag patent is prior art. Hammerschlag is the use of a balloon to expand a stint. So, again, what is simpler than you stick the balloon inside URSIC, and voila, you have the 762 patent. So if there is any case that screams for an opportunity to be ruined by a fact finder, when you have this close of heart, I mean, this is this case. If there's any case that should ever be remanded for a KSR like this case, I do know the court has already remanded one case to be considered, reconsidered in light of KSR, and that is the Vonage case from last week, in which there was a remand and a request to the district court in the first instance to look at the KSR instruction. This is clearly a situation here, though, where it was an extremely flat-footed instruction, and I read to the court, if the prior art references as a whole do not teach, suggest, or motivate that nomination, then they may not be combined. That was the instruction below. And that's not KSR. What KSR teaches is that it may be a factor, that it's not dispositive, and if the instruction is read as a whole, the entire instruction with respect to obviousness, one cannot help but come away with the idea that there has been an incorrect jury instruction, which most certainly affected the jury's outcome. Very well, I think we have your argument. Why don't we reserve your rebuttal time, and we'll give your co-counsel his rebuttal. Thank you, Your Honor. Mr. McMurray. Thank you, Your Honor. I appreciate the indulgence. May it please the Court, John Damaris for Boston Scientific. At the outset, I think it's important to note that this is Boston Scientific's first trip to the Court of Appeals. Although we've had two trials, they were, and that was due to the judge giving us a new trial on a specific issue, and this is our first time here to address all the issues. And our issues are very different from Medtronic's issues. The first one I'd like to address, which was not briefed by Medtronic in its first appeal, or this one, is the plain-term law service. In the first trial that we had, the district court erred very clearly under the current law when she allowed the jury to consider the doctrinal equivalence for a walled surface. In her J-Wall decision, Judge Robinson found that there was, in the prosecution here, the court has disclaimed the wall surfaces that didn't have a common cylindrical plane. In the district court's words, in the J-Wall decision, the ERSEC prior art reference had twisting numbers coming out of the cylindrical circumference, and in court, as the applicant told the patent office, our walled surface has to be in a common cylindrical plane. As a result, the court put those terms into the literal construction. So walled surface took courses taken from the prosecution history and read that common cylindrical plane into the literal construction. Nonetheless, the district court then, when considering doctrinal equivalence, admittedly, the court said it was confused about the law. I think if you read the J-Wall decision at A290 to 291, the district court said negotiating the boundaries between what is a disclaimer and what is prosecution history estoppel is puzzling, the court said. But this court's jurisdiction is not puzzling. There are several cases, including the Cordis ABE case that was appealed earlier in this very action, where the court said the task of prosecution disclaimer, which leads to literal construction, and arguments estoppel, which bars doctrinal equivalence, is the same test. And the court referred to the Omega engineering case, and that is in the law here. It's not puzzling. It's quite clear. If you're going to have a prosecution disclaimer that limits the literal interpretation of the claim, like we did here, that is the same test for arguments estoppel to limit doctrinal equivalence. So what happened here? The district court did a prosecution disclaimer, interpreted walled surface as to be a common cylindrical plane. Cordis did not appeal that instruction here. It disappealed. But then the district court allowed the jury to consider whether you can have doctrinal equivalence to that common cylindrical plane, thus vitiating the literal construction and the literal disclaimer, totally undoing what was the whole point of the prosecution disclaimer, and it's in violation of this court's settled precedent on that issue. And Cordis doesn't take issue with the fact that if doctrinal equivalence should not have gone to the jury, then under Litton and United Pilots, we are entitled to, at a minimum, a new trial on the issue of whether to limit the walled surface in a common cylindrical plane as a matter of literal infringement. But we don't even need a new trial here because the evidence about how the stem is constructed is undisputed. In our stem, when you go from end to end with the exterior surface, our experts and our faculty have testified that the u's, there are these straight portions and then u portions, those u's, when you make the stem, pop out of the cylindrical surface of the stem. 19% of u's pop out more than 100%. Some of them up to 125%. This raises the question that's puzzling to me and maybe it's very clear. I'm sure it's clear to you. I hope so. I'm sure it is. The first trial, the focus was on the tubular member being, for lack of a better term, the segment in between the u's. That was one of Cortes' positions. It wasn't their own. In any event, if that segment had been found to be infringing, then that would be a sufficient predicate for infringement as I understood their position in the first trial. That was Cortes' position. We disagree with that. I understand. That was their position. If I understand correctly, Cortes changed its position in the second trial to say that the tubular member now extends to incorporate at least one of the u-shaped. In the second trial, they conceded that it had to be the whole stem. The whole stem. We don't even know if any one jury... The whole stem can be presumably short, but I gather that the concession extended to at least one u-shaped device. Yes. Yes. We have a table of them on anyone's deck. Exactly. But the issue there is that this patent cannot be read, just to pick up on that point before I go to my next, this patent cannot be read that the tubular member would be one of those sections. We call it a C-section because they look like C's for several reasons. Number one, the claim requires the tubular member to be elongated, which is substantially longer in the longitudinal than in the circumferential. When you look at those rings, they're essentially square, so it wouldn't need to be a tubular member. Secondly, they're nowhere in the patent if it's one of those C-sections to be the tubular member. There's only one section of the patent that even mentions rings. It was added during reading, and they added a section in the specification called the ring portion. But even in that section of the spec, it says the ring portion is a portion of the tubular member. So their only disclosure of a ring itself defines it as a portion of the tubular member, and the tubular member, if you want to call that a C-section in our standard, a tubular member, it wouldn't be elongated. So I think that was a theory that the court has realized the problems with, and they abandoned it, and in the second trial they didn't even pursue it. So that's another reason, frankly, why the first trial was tainted. But even if the first trial, even if the first jury relied on it... You haven't raised that. It's actually in our brief where we say that it shouldn't have been able to read on the ring portion. I don't know that we then reached the conclusion that the first trial was going to be tainted. That was... I didn't see it. But we did brief the issue about the ring portion shouldn't be subject to these claims. But this wall surface issue actually permeated the problem in the second trial as well. So what happened in the first trial is wall portion goes to the jury under literal and doctrinal equivalence. And they come back, they don't find it at all, they find doctrinal equivalence in the fringe ring. It just gives us a retrial on the next limitation I want to talk about, which is substantially uniform thickness. In the retrial, so now we've got a jury trying to figure out whether our stamp has a substantial uniform thickness. And what happens at the trial, the jury sends out a note and says, well, what's the wall surface? What does it mean to be disposed in a common cylindrical plane? What they're grappling with is what is it you're supposed to measure?    in this case. The claim requires the wall surface to be a uniform thickness. And the jury says, well, what's the wall surface? What does it mean to be disposed in a common cylindrical plane? She didn't answer the question. So she said as an evasion, she said it's irrelevant, didn't she? Exactly. And that's where the problem comes in. There is no dispute between the parties about the measurements.     at the second trial a theory that the thickness of a wall surface is the same as the thickness of a cylindrical plane. And the jury said, well, that's not true. The thickness of our metal was the wall thickness. Regardless of the orientation of the structure, whether they stay in a cylindrical plane or not, we pursued a different theory and we showed following this court's decision in ADE-1 the earlier theory. We put a cylindrical, an imaginary cylinder down the center of the stent and we measured radially outward to the outermost portion of the outer wall to determine what the thickness was. We thought they were following the earlier decision and we presented a jury with those measurements. Now, neither side took issue with each other's measurements. We didn't say they measured our metal wrong. They didn't say we made the radial measurements wrong. There's no dispute about how the products work. I suppose that means this is a claim construction issue. What should we be measuring is a claim construction issue. This is where this is the reason I asked the question earlier. This is where I start to get a little confused. Let me ask the question this way. At page 21, 519 of the appendix and this is in Cordes' response in opposition to BSC's motions in limine, Cordes states that the parties are now in agreement for the purpose of this trial, the 2005 trial, that the NIR stent as a whole meets the limitations in claim 23 of the 762 patent that require a tubular member having a wall surface. So, when the jury comes back and asks about wall surface, why isn't it legitimate for the trial court to say that issue is not before you? It's a good question and it was what we struggled with trying to explain there as well which is the first jury found wall surface either literally or by equivalence. In fact, they found it by equivalence by not telling the second jury. Do we know by the way that they found it by equivalence or do we simply know that they found it   know that they found it by equivalence? They checked no literal infringement for overall and they checked document code. But there wasn't a special verdict in which they checked DOE for this limitation. Exactly. But we did not admit literal infringement and by the district court we were not telling the jury that there is a difference. So the second jury in 2005 was getting instruction from the judge that the parties agreed there is a wall surface. That's not exactly right. The parties agreed that we weren't contesting that element in the second trial because the first jury admitted literally or by equivalence. And by equivalence matters because if there is a wall surface the jury is going to think that the only thing they need to measure is the metal. I suppose you would say that since the jury has to decide whether the    jury is   be the only thing they need to measure. The second jury in 2005 was getting instruction from the jury that the parties agreed there is a